*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1188**

Cole Robert Hooker,
Respondent,

vs.

David Sean Kennedy,
Appellant.

**Filed January 20, 2026
Affirmed
Connolly, Judge**

Sherburne County District Court
File No. 71-CV-25-930

Tyler R. Dahlen, Tamburino Law Group, Minneapolis, Minnesota (for respondent)

David S. Kennedy, Vancouver, Washington (pro se appellant)

Considered and decided by Connolly, Presiding Judge; Bond, Judge; and Smith, John P., Judge.[*]

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

In this dispute related to a harassment restraining order (HRO), pro se appellant argues that the district court lacked personal jurisdiction over him. Because the district court did not err in determining that it had personal jurisdiction over appellant, we affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

In June 2025, respondent Cole Robert Hooker, who lives in Minnesota, filed a petition for an HRO against appellant David Sean Kennedy, who resides in the State of Washington. The petition alleged that, beginning in April 2022, appellant began harassing respondent through threatening phone calls and text messages, and by mailing letters and items to respondent's home. The petition also alleged that appellant harassed respondent by impersonating respondent on a social media account.

Based on the allegations in respondent's HRO petition, as well as the attached exhibits that consisted of communications sent by appellant to respondent, the district court granted an ex parte HRO in favor of respondent. Appellant subsequently filed a motion to dismiss with prejudice under Minnesota Rule of Civil Procedure 12.02(b), arguing that, under Minn. Stat. § 543.19 (2024), the district court lacked personal jurisdiction over him. In appellant's filings, he admitted to sending communications to respondent, but disputed the number and content of these communications. Appellant also claimed that certain communications stemmed from two conciliation-court cases in which appellant sought the return of items he had given to respondent.

A hearing was held at which the district court stated on the record that it had personal jurisdiction over appellant because Minn. Stat. § 609.748, subd. 2(d) (2024), provides "that an application can be filed in any county where either party lives or where the harassment has occurred." The district court, therefore, denied appellant's motion to dismiss. And, because appellant wished to appeal the denial of his motion to dismiss, the parties did not address the merits of respondent's petition, and the ex parte HRO remained in effect.

2

Appellant filed a motion asking the district court to reconsider the denial of his motion to dismiss. The district court denied the motion "for failure to follow the Minnesota General Rules of Practice." In so ruling, the district court clarified its oral ruling of the motion to dismiss, reiterating that it had personal jurisdiction under Minn. Stat. § 609.748, subd. 2(d). And the district court determined that, even if it "were to consider Minnesota's long-arm statute, the [HRO] petition and supporting exhibits show on a prima facia basis that the Court has personal jurisdiction over [appellant], and [appellant] does not sufficiently rebut that showing in his motion filing to require an evidentiary hearing on the issue." This appeal follows.[1]

## DECISION

Appellant challenges the district court's denial of his motion to dismiss respondent's HRO petition for lack of personal jurisdiction. "[P]ersonal jurisdiction refers to the court's power to exercise control over the parties." *Swanson v. Wolf*, 986 N.W.2d 217, 220 (Minn. App. 2023) (quotation omitted). Appellate courts review questions of personal jurisdiction de novo. *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 326 (Minn. 2016). To overcome a motion to dismiss for lack of personal jurisdiction, the plaintiff must make "a prima facie showing of personal jurisdiction." *Id.*

As a threshold matter, the district court relied on section 609.748, subdivision 2(d), to deny appellant's motion to dismiss the HRO petition for lack of personal jurisdiction at the hearing. This statute provides that "[a]n application for relief under this section may

---

[1] Respondent did not file a brief in this matter and this court ordered that the case be determined on the merits pursuant to Minn. R. Civ. App. P. 142.03.

3

be filed in the county of residence of either party or in the county in which the alleged harassment occurred. There are no residency requirements that apply to a petition for a[n HRO]." Minn. Stat. § 609.748, subd. 2(d).

Appellant argues that the district court erred by relying on section 609.748, subdivision 2(d), because the "plain language" of this statute "addresses venue, not power over a nonresident." Appellant contends that, because "[a] venue statute cannot create personal jurisdiction," the district court erred in denying his motion to dismiss for lack of personal jurisdiction.

Assuming, without deciding, that section 609.748, subdivision 2(d), relates to venue rather than personal jurisdiction, we conclude that the district court did not err in determining that it had personal jurisdiction over appellant under Minnesota's long-arm statute. Minnesota's long-arm statute governs its exercise of personal jurisdiction over a nonresident defendant. Minn. Stat. § 543.19, subd. 1. The long-arm statute allows courts in Minnesota to assert personal jurisdiction over a respondent to the full extent permissible under federal due-process requirements. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004). To abide by due-process requirements, a respondent must have certain minimum contacts with Minnesota, and the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *Id.* Minimum contacts exist when a respondent purposefully avails himself to the privileges, benefits, and protections of Minnesota to such a degree that he should reasonably anticipate being called into court. *Rilley*, 884 N.W.2d at 327.

4

In Minnesota, five factors are analyzed to determine whether the minimum-contact and fair-play requirements are met: "(1) the quantity of contacts with the forum state; (2) the nature and quality of those contacts; (3) the connection of the cause of action with these contacts; (4) the interest of the state providing a forum; and (5) the convenience of the parties." *Id.* at 328 (quotation omitted). The first three factors concern minimum contacts, and the last two concern fair play and substantial justice. *Id.* Any doubts as to jurisdiction must be "resolved in favor of retention of jurisdiction." *Hardrives, Inc. v. City of LaCrosse*, 240 N.W.2d 814, 818 (Minn. 1976).

Here, as the district court determined, respondent has asserted that appellant engaged in acts initiated by appellant outside of Minnesota, such as sending unwanted, aggressive, and threatening letters through United States mail, text messages, emails, and other means of digital communications. And respondent claimed that these acts caused him injury in Minnesota by making him feel frightened and threatened. In determining whether respondent has made a prima facie showing of jurisdiction, this court does not delve into the merits of respondent's claims, but merely accepts the factual allegations in respondent's petition and supporting documents as true. *See Rilley*, 884 N.W.2d at 326. Under this standard of review, on the limited issue of personal jurisdiction, respondent made a prima facie showing of minimum contacts.

Appellant argues that his communications with respondent are insufficient to establish minimum contacts. His argument appears to focus on letters he admittedly sent to respondent that appellant claims are "directly related to the subject" of a conciliation court case between appellant and respondent involving "[r]espondent's noncompliance

5

with a settlement agreement and [a]ppellant's intent to enforce it." Appellant argues that, because these letters "are protected by Minnesota's absolute litigation privilege," they are insufficient to serve as the minimum contacts required for personal jurisdiction.

To support his position, appellant relies on *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224 (Minn. 2014), and *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302 (Minn. 2007). But neither one of these cases involve personal-jurisdiction issues, nor do they stand for the proposition for which they are cited. As such, these cases do not support appellant's position that the letters he sent to respondent are insufficient to serve as the minimum contacts required for personal jurisdiction because they are protected by litigation privilege.

Moreover, as the district court determined, the "letters, on their face, have very little litigation value," and instead "either demean [respondent] or . . . try to make [respondent] feel bad for [appellant]." Indeed, the record reflects that appellant sent three letters through the mail to respondent. In the first letter, only one paragraph of the two-page letter references the litigation process by stating that appellant intends to file an affidavit of non-compliance because he had not received certain items respondent allegedly agreed to send appellant. The rest of the letter is an expression of appellant's emotions and contains personal attacks and insults of respondent. Similarly, the second letter, which is six pages in length, consists of more expressions of appellant's emotions and recitals of past events, and contains nothing related to litigation. And the third letter, which consists of seven pages, includes what appears to be a diagram detailing appellant's emotions in the "post-[respondent]" time-frame. Although the letter may contain some litigation information,

6

the letter is mostly derogatory and threatening. In light of the lack of litigation value contained in the letters, appellant cannot show that these letters must be withheld from the minimum-contacts analysis. As the district court pointed out, appellant "does not get to avoid consequences for sending allegedly harassing letters to [respondent] just because he briefly mentions the next steps he will take in their on-going litigation."

In addition to the letters appellant sent respondent, the record reflects that appellant sent electronic communications to respondent. Indeed, our supreme court has stated that, "[i]n the modern digital era, with ubiquitous e-commerce and electronic communication, it would be arbitrary to exclude emails from consideration in the minimum contacts analysis, or to limit email to an exclusively supplemental role." *Rilley*, 884 N.W.2d at 332.

Here, the record reflects that appellant sent respondent several electronic communications between 2022 and 2025, including emails and text messages, messages through an iCloud account, and at least one phone call. In fact, appellant admits to emailing respondent once, sending him two series of text messages, and calling him once. Although appellant claims that these communications were for litigation purposes, the nature of these communications have little litigation value. Instead, as the district court found, these communications were demeaning, "aggressive," and support respondent's claim that appellant "threatened and harassed him." These electronic communications, combined with the letters appellant sent respondent through United States mail, establish sufficient minimum contacts between appellant and the State of Minnesota. And, because appellant availed himself of Minnesota systems by sending respondent various forms of harassing communications, it is within traditional notions of fair play and substantial justice to allow

7

respondent to proceed with his HRO petition.  Therefore, the district court did not err in concluding that it had personal jurisdiction over appellant.

**Affirmed.**